**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0803-20

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

GREGORY D. PRIOR,

      Defendant-Appellant.

_____

Argued January 30, 2024 – Decided February 29, 2024

Before Judges Mayer, Enright and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 18-08-0821.

Morgan A. Birck argued the cause for appellant (Joseph A. Krakora, Public Defender, attorney; Morgan A. Birck, Assistant Deputy Public Defender, of counsel and on the briefs).

Deepa S. Jacobs argued the cause for respondent (Mark Musella, Bergen County Prosecutor, attorney; William P. Miller, Assistant Prosecutor, of counsel and on the

brief; Catherine A. Foddai, Legal Assistant, on the brief).

PER CURIAM

Defendant Gregory D. Prior appeals from his convictions related to crimes occurring on two separate dates—just three days apart. He also appeals from the sentences imposed. We affirm as to the convictions, and remand to the trial court to consider the fairness of the sentence imposed consistent with State v. Torres[1] and to amend the judgment of conviction vacating defendant's payment of restitution.

We recite the facts from the suppression hearing and trial testimony. On May 24, 2018, defendant stole a Jeep in Paramus. Subsequently, while at a supermarket in Paramus, defendant grabbed a woman's pocketbook and fled.

On May 27, 2018, around 10:30 a.m., Michelle Fleites went to retrieve her car keys from her purse after shopping at an Acme supermarket in Fort Lee. While searching for her keys, Fleites noticed a white male in his fifties or sixties with light hair, wearing baggy jeans and a baggy sweatshirt, looking at her. Fleites thought the man was going into the supermarket. Instead, the man snatched her purse and fled toward a white sedan. Fleites chased the man in an

---

[1] 246 N.J. 246 (2021).

effort to recover her purse, which contained credit cards, personal identification, and cash in an amount between $170 to $200.

The man opened the door to enter the white sedan. However, before the man could close the car door, Fleites "wedged" herself between him and the door. While Fleites struggled to retrieve her purse, the man grabbed items from the purse and threw them toward the passenger side of the car, scattering the items on the floor. When the man started the car, Fleites backed away to avoid being driven off with the car.

Fleites then ran over to another man standing nearby. The man, James Chung, heard Fleites scream, saw her run toward a white car, and struggle with a man inside the car. Chung identified the car as a late-model white Honda Civic sedan. Chung described the man driving the car as an older white male.

Fleites asked Chung to call 9-1-1. Chung did so, and provided the car's license plate number to the dispatcher. Video footage recovered from the Acme supermarket and shown at trial captured the encounter between Fleites and the suspect. The video showed the suspect wearing a sweatshirt with distinctive striped markings on the sleeves.

At approximately 10:27 a.m. on May 27, 2018, a white Honda sedan was reported to the police as stolen. At 10:44 a.m., Fleites reported the theft of her

A-0803-20

purse to the police and gave a detailed description of the suspect. At 10:48 a.m., New Jersey State Trooper Richard Musso received a call that a white Honda sedan had been stolen, was travelling on the New Jersey Turnpike, and was allegedly involved in a robbery in Fort Lee. The white Honda sedan was tracked through a cell phone still in the car, which belonged to the owner of the stolen car.

Around 11:00 a.m., Musso also received notice that the stolen white sedan had been tracked to the Vince Lombardi Service Area (service area) on the New Jersey Turnpike, and the suspect in the Fort Lee supermarket robbery was an unshaven white male in his fifties wearing a blue sweatshirt with stripes.

When Musso arrived at the service area at 11:02 a.m., he found the white Honda sedan with the identified license plate number parked in front of the convenience store. Musso maneuvered his patrol car behind the sedan to prevent the vehicle from leaving the parking lot. After another trooper arrived, Musso looked through the window of the white Honda sedan and noticed a purse on the passenger-side floor.

A-0803-20

Musso entered the service area's convenience store and saw four people inside.[2] Only one person inside the convenience store fit the suspect's description.

While inside the convenience store, Musso asked to speak with defendant. Musso asked where defendant lived, and defendant responded he was homeless. This response prompted Musso to inquire how defendant travelled to the service area. Defendant simply shrugged.

Based on defendant's reaction, Musso assumed defendant did not want to continue speaking. As a result, Musso handcuffed defendant, advised him of his Miranda[3] rights, and placed him in the back seat of the patrol car.

Inside the patrol car, defendant admitted to Musso that he stole the white Honda sedan. However, there was no recording of defendant's conversation with Musso because the equipment in the patrol car malfunctioned. Musso reportedly did not realize the malfunction until much later.

---

[2] The four people in the convenience store were a young man and a young woman in their "[t]wenties to thirties" who appeared to be together, the store cashier, and defendant. According to Musso, defendant was an unshaven male in his fifties and wore a blue sweatshirt with yellow stripes.

[3] Miranda v. Arizona, 384 U.S. 436 (1996).

A-0803-20

In searching defendant, Musso found a cigarette box containing $197 in cash in defendant's right front pant pocket. Lieutenant Edward Young of the Fort Lee Police Department, who also responded to the service area, testified a search warrant for the car found a purse matching the description given by Fleites, a cell phone, and a wallet containing Fleites's driver's license.

Video footage from the service area, which was played during trial, showed a white car parking across from the convenience store. In the video, an individual fitting defendant's description and wearing the same distinctive clothing—a dark sweatshirt with distinctive stripes on the sleeves—is depicted walking from the direction of the white car. The video did not clearly show the individual exiting the white car.

In August 2018, a Bergen County grand jury returned an indictment against defendant for the following charges occurring on May 24, 2018: third-degree burglary, N.J.S.A. 2C:18-2(a)(1) (count one); third-degree theft by unlawful taking of movable property in connection with a stolen Jeep, N.J.S.A. 2C:20-3(a) (count two); and second-degree robbery, N.J.S.A. 2C:15-1(a)(1) (count three). Defendant was also indicted on the following charges occurring on May 27, 2018: third-degree theft receipt of stolen property, N.J.S.A. 2C:20-7(a) (count four); and second-degree robbery, N.J.S.A. 2C:15-1 (count five).

A-0803-20

Defendant filed pretrial motions to suppress his statement to Trooper Musso and sever the charges into separate trials based on the dates of the alleged offenses. The judge granted defendant's motion to sever the charges.

The judge conducted a hearing on defendant's suppression motion. At the suppression hearing, and consistent with his trial testimony, Musso described his arrival at the service area and encounter with defendant. He testified that after handcuffing and placing defendant in his patrol car, Musso advised defendant of his Miranda rights.

Video footage from the dashboard camera of another police vehicle at the scene showed Musso consulting with his supervisor in the service area's parking lot. In reporting to his supervisor, Musso advised defendant was informed of his rights. Musso also told his supervisor defendant did not admit to stealing the car because "he had nothing to say."

Despite defendant stating he "had nothing to say," when Musso returned to his patrol car, Musso asked defendant why he stole the car. Defendant answered he stole the car because he was addicted to heroin and needed the money to buy drugs.

According to Musso, defendant did not appear to be under the influence of alcohol or drugs at the time. Nor did defendant appear confused regarding

7

his rights. Musso further testified defendant acknowledged understanding his rights after receiving the <u>Miranda</u> warnings. However, because the recording equipment in Musso's patrol car malfunctioned, the conversation was not recorded. Musso explained he was unaware of the malfunction until he sought to retrieve the recording.

On July 24, 2019, the judge denied defendant's motion to suppress defendant's statement. The judge found Musso's account of the encounter credible. The judge noted Musso duly advised defendant of his rights prior to defendant's statement, and defendant acknowledged understanding those rights. Further, the judge concluded the encounter was brief, and there were no signs Musso forced or coerced defendant into making a statement. The judge also found no evidence of intoxication, fatigue, or other impairment prior to defendant making the statement. The judge concluded the State met its burden of demonstrating beyond a reasonable doubt that defendant's statement was knowing and voluntary.

Counts four and five, regarding the charges related to the events occurring on May 27, 2018, were tried first. The jury heard the State's case on those counts from October 9 through October 17, 2019. After hearing the testimony and

A-0803-20

considering the evidence, the jury convicted defendant on count four and a lesser-included offense of third-degree theft of a person on count five.

On October 22, 2019, defendant entered a guilty plea on count three to an amended charge of third-degree theft of a person, subject to the State's agreement to dismiss the remaining two counts and recommend an extended-term nine-year sentence to run concurrent to defendant's sentence on counts four and five.

Prior to sentencing, defendant applied for admission to Recovery Court. In a January 28, 2020 order and written decision, a different judge denied the application because defendant had prior convictions for aggravated assault and was subject to an extended-term sentence.

Defendant appeared for sentencing on February 14, 2020. At sentencing, defendant moved to withdraw his plea on count three, asserting he had been incorrectly informed regarding the consequences of the plea on his Recovery Court application. Defendant also requested postponement of sentencing on counts four and five.

The sentencing judge granted defendant's motion to withdraw the plea on count three. However, he declined to postpone sentencing on the remaining counts. The judge sentenced defendant to a term of five years on count four and

a term of ten years on count five, subject to a period of parole ineligibility on each count. Additionally, the judge ordered the sentence on count four to run consecutively to the sentence on count five.

On September 21, 2021, defendant pleaded guilty to count three as amended to second-degree robbery.

On January 28, 2022, the judge sentenced defendant on count three as amended to a term of nine years, subject to a period of parole ineligibility pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2. The judge ordered the sentence on count three to run concurrently to defendant's sentences on counts four and five. On February 10, 2022, the judge signed the judgment of conviction memorializing the sentences imposed, including an amended judgment of conviction regarding the counts to which defendant had previously been sentenced.

On appeal, defendant raises the following arguments:

POINT I

> THE STATEMENT OF DEFENDANT SHOULD HAVE BEEN SUPPRESSED BECAUSE HE INVOKED HIS RIGHT TO SILENCE, WHICH WAS SUBSEQUENTLY VIOLATED.
>
> A. Upon remand, if the statement is suppressed, [defendant] should be given the opportunity to take back his plea.

POINT II

[DEFENDANT'S] CONVICTIONS SHOULD BE REVERSED BECAUSE THE OFFICER'S MENTION OF THE EXCLUDED OUT-OF-COURT IDENTIFICATION COULD NOT HAVE BEEN CURED.

POINT III

TWO INVESTIGATING OFFICERS GAVE IMPROPER LAY-WITNESS OPINION TESTIMONY AS TO CRUCIAL IDENTIFICATION DETAILS. (Not Raised Below).

POINT IV

REPEATED INSTANCES OF PROSECUTORIAL MISCONDUCT DENIED DEFENDANT A FAIR TRIAL. (Partially Raised Below).

POINT V

THE COURT SHOULD HAVE GIVEN AN ADVERSE INFERENCE INSTRUCTION TO THE JURY REGARDING THE FAILURE TO RECORD THE QUESTIONING OF DEFENDANT. (Not Raised Below).

POINT VI

THE CUMULATIVE IMPACT OF THE ERRORS DISCUSSED ABOVE DEPRIVED [DEFENDANT] OF A FAIR TRIAL. (Not Raised Below).

POINT VII

11

BECAUSE DEFENDANT DID NOT KNOWINGLY AND VOLUNTARILY WITHDRAW FROM HIS PLEA, HIS SECOND PLEA IS INVALID.

POINT VIII

BECAUSE THE TRIAL COURT FAILED TO ENGAGE IN EITHER A YARBOUGH[4] OR TORRES ANALYSIS WHEN SENTENCING DEFENDANT TO CONSECUTIVE SENTENCES, THIS COURT SHOULD REMAND FOR RESENTENCING.

POINT IX

BECAUSE THE MONEY THAT WAS STOLEN WAS RECOVERED AND RETURNED TO THE VICTIM, IT WAS ERRONEOUS TO ORDER DEFENDANT TO PAY RESTITUTION.

I.

We first address defendant's argument the judge erred in failing to suppress his statement to Trooper Musso because defendant invoked his right to remain silent. The State acknowledges the judge may have erred in denying defendant's motion to suppress. However, the State asserts the error, if any, was harmless in light of the overwhelming evidence of defendant's guilt presented to the jury.

---

4  State v. Yarbough, 100 N.J. 627 (1985).

A defendant has a federal constitutional right against self-incrimination guaranteed by the Fifth and Fourteenth Amendments, <u>Malloy v. Hogan</u>, 378 U.S. 1, 6 (1964), as well as an analogous state privilege against self-incrimination under our common law and evidence rules, <u>State v. Hartley</u>, 103 N.J. 252, 260 (1986). To safeguard those guarantees in the coercive environment of a custodial interrogation, suspects must be advised that they have the right to remain silent, any statement they make may be used against them, and they have the right to an attorney. <u>Miranda</u>, 384 U.S. at 444.

A suspect's invocation of those rights must be "scrupulously honored." <u>Michigan v. Mosley</u>, 423 U.S. 96, 103 (1975). As our Supreme Court explained:

> [A] suspect is not required to express a desire to terminate interrogation with the "utmost of legal precision." <u>State v. Bey I</u>, 112 N.J. 45, 65 (1988). "[A]n equivocal indication of a desire to remain silent, like an unequivocal indication, suffices to invoke <u>Miranda</u>'s requirement that the interrogation cease." <u>Christopher v. Florida</u>, 824 F.2d 836, 840, 841 (11th Cir. 1987). Thus, a suspect who has "nothing else to say," <u>id.</u> at 842, or who "[does] not want to talk about [the crime]," <u>State v. Bishop</u>, 621 P.2d 1196, 1198 (Or. Ct. App. 1980), has asserted the right to remain silent, thereby requiring the police immediately to stop questioning.
>
> [<u>State v. Johnson</u>, 120 N.J. 263, 281 (1990) (citations reformatted).]

A-0803-20

A court may only admit incriminating statements made by a suspect during a custodial interrogation if the suspect was duly advised of, and validly waived, their rights prior to making the statement. Miranda, 384 U.S. at 444-45. The State bears the burden of proving the elements for admission of a suspect's statement beyond a reasonable doubt and, particularly with regard to a purported waiver of the Miranda rights, must establish that the waiver was knowing, voluntary, and intelligent. State v. Presha, 163 N.J. 304, 313 (2000). Whether the waiver satisfies these criteria depends on the following:

> the totality of the circumstances, including both the characteristics of the defendant and the nature of the interrogation. Relevant factors to be considered include the suspect's age, education and intelligence, advice concerning constitutional rights, length of detention, whether the questioning was repeated and prolonged in nature, and whether physical punishment and mental exhaustion were involved.
>
> [State v. Galloway, 133 N.J. 631, 654 (1993) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973)); State v. Miller, 76 N.J. 392, 402 (1978).]

A trial court's findings of fact related to a defendant's waiver of Miranda rights are entitled to deference on appeal provided there is sufficient credible evidence in the record to support those findings. State v. Elders, 192 N.J. 224, 242-44 (2007). However, a trial court's legal conclusions are subject to de novo review. State v. Shaw, 213 N.J. 398, 411 (2012).

A-0803-20

Under New Jersey law, "[i]n the context of custodial interrogation, once a defendant clearly and unambiguously invokes his right to remain silent, interrogation must cease." State v. Maltese, 222 N.J. 525, 545 (2015). "[A]ny words or conduct that reasonably appear to be inconsistent with defendant's willingness to discuss his case with the police are tantamount to an invocation of the privilege against self-incrimination." State v. Alston, 204 N.J. 614, 622 (2011) (first alteration in original) (quoting State v. Bey (Bey II), 112 N.J. 123, 136 (1988)).

As such, "a suspect who has 'nothing else to say,'" Johnson, 120 N.J at 281 (quoting Christopher, 824 F.2d at 836, 842), or who has indicated "he would have nothing to say," Bey I, 112 N.J. at 64, has "asserted the right to remain silent, thereby requiring the police immediately to stop questioning," Johnson, 120 N.J. at 281. If the police persist in questioning a suspect under such circumstances, a statement made in violation of the privilege must be suppressed. See Maltese, 222 N.J. at 546.

Defendant argues the judge erred in admitting his statement about stealing the car because he invoked his right to remain silent. We agree.

Defendant told Musso "he had nothing to say." This statement was a clear invocation of defendant's right to remain silent. Thus, Musso's continued

A-0803-20

questioning of defendant thereafter violated that right and required suppression of the statement. On these facts, we are satisfied the judge erred in admitting defendant's statement.

While we agree defendant's statement to Musso should have been suppressed, we must determine whether, as the State contends, the error was harmless beyond a reasonable doubt in light of the overwhelming evidence of defendant's guilt introduced during the trial. State v. Weaver, 219 N.J. 131,154 (2014).

The State's proofs of defendant's guilt on this record were sufficiently strong in the absence of defendant's statement to Musso. Chung testified the suspect who stole Fleites's purse fled in a white Honda sedan. Chung reported the license plate number of the vehicle to the police. Fleites and Chung provided detailed descriptions of the suspect, including the suspect's wearing of a baggy blue sweatshirt with distinctive yellow stripes on the sleeves. The video footage from the Acme supermarket corroborated the eyewitnesses' description of the suspect. Defendant, who fit the description, was at the service area along with the stolen white Honda sedan, as confirmed by Musso, Young, and video footage from the service area. Additionally, defendant had the same amount of cash on his person that Fleites reported stolen.

A-0803-20

Even absent defendant's statement to Musso, there was a multitude of untainted and unchallenged evidence presented to the jury to prove defendant's guilt. Fleites, Chung, and Musso identified defendant as having committed the crimes based on his distinct appearance and clothing as seen in the video footage from the Acme supermarket and the service area. Moreover, the evidence related to the theft of the white Honda sedan was independently substantiated through evidence other than defendant's statement to Musso, including the following: Chung's description of the car and driver that fled the Acme supermarket with Fleites's purse; Chung's immediately reporting the license plate number of that car to 9-1-1; law enforcement's tracking of the stolen white Honda using a cell phone belonging to the owner of the stolen white Honda sedan which remained in the car while it travelled to the service area; and the short duration of time between the reported thefts of the white Honda sedan and Fleites's purse.

Because there was strong circumstantial evidence of defendant's guilt in this matter, the error in admitting defendant's statement after invoking his right to remain silent did not deprive him of a fair trial. Here, the convictions were not substantially dependent on defendant's statement to Musso. We are satisfied the evidence was sufficient to establish defendant's guilt and admission of

17

defendant's statement was harmless error beyond a reasonable doubt. See Weaver, 219 N.J. at 154.

## II.

We next address defendant's argument that the denial of his motion for a mistrial constituted an abuse of discretion. Defendant moved for a mistrial after Lieutenant Young mentioned Fleites's out-of-court identification of defendant during cross-examination. We reject this argument.

We review a trial judge's denial of a motion for mistrial for abuse of discretion and will reverse only if the denial resulted in a "manifest injustice." State v. Herbert, 457 N.J. Super. 490, 503 (App. Div. 2019) (quoting State v. Harvey, 151 N.J. 117, 205 (1997)). In deciding an application for a mistrial, a court should "consider the unique circumstances of the case," and reject a mistrial application in favor of any "'appropriate alternative course of action,'" such as a curative instruction or brief adjournment, which presents a viable remedy. State v. Smith, 224 N.J. 36, 47 (2016) (quoting State v. Allah, 170 N.J. 269, 281 (2002)).

To determine whether a curative instruction provides an appropriate alternative to a mistrial, a court should evaluate the adequacy of a proposed instruction in light of the nature and prejudicial effect of the offending evidence,

the timing and substance of the instruction, and the extent of the risk that imperfect compliance will yield an unjust result.  Herbert, 457 N.J. Super. at 505-08.  A motion for mistrial should be denied where a curative instruction cured any prejudice.  State v. Winter, 96 N.J. 640, 647 (1984).

Here, prior to trial, defendant challenged the State's anticipated introduction of Fleites's out-of-court identification of defendant.  Because defendant established a threshold showing of suggestiveness in the identification procedure to warrant a hearing under State v. Henderson, 208 N.J. 208, 288-89 (2011), the State agreed not to pursue any evidence of the out-of-court identification at trial.  Consequently, the judge ruled Fleites was not permitted to proffer either an in-court or out-of-court identification of defendant.

Although Lieutenant Young was told not to mention Fleites's out-of-court identification, he did so at trial.  In response to defense counsel's cross-examination of Young, challenging the thoroughness of the police investigation in this case, the following exchange occurred:

> Q.    Can you explain why you determined not to . . . test for DNA and fingerprints with regards to this investigation?
>
> A.    Because it wasn't needed in my opinion.
>
> Q.    Okay.  And can you tell us how you came to that opinion during this investigation?

19

A. Because the victim positively identified the defendant in this case.

Defense counsel immediately objected. However, counsel's objection was limited to Young's use of the term "victim." In response to that objection, the judge gave an immediate curative instruction to the jury.

After issuing the curative instruction, defense counsel requested a sidebar conference and objected to Young's mentioning Fleites's identification of defendant. Defendant moved for a mistrial based on Young's statement "the victim positively identified the defendant."

The judge agreed Young's mentioning that an eyewitness identified defendant could have an effect on the jury's deliberations. Although the judge reserved on the mistrial motion, the judge gave the jury the following instruction:

> [Y]ou heard testimony from this witness regarding an alleged out-of-court identification of the defendant. That is not evidence [] in this case. Anything regarding that alleged identification must be disregarded by you and stricken from the record. That testimony and any consideration of any out-of-court identification should be entirely disregarded and may not be used . . . by you for any purpose. That testimony should not come into your deliberations, your weighing of the evidence, or your ultimate decision in this matter.

A-0803-20

After Young completed his testimony, the judge addressed defendant's motion for a mistrial. The judge denied the mistrial, finding the "strong" curative instruction issued while Young remained on the witness stand eliminated any prejudice from the officer's solitary "fleeting remark."

Defendant concedes the judge's curative instruction was timely and forceful. However, defendant argues the instruction failed to adequately explain why the jury needed to disregard the evidence. He further asserts Young's testimony regarding Fleites's identification of defendant influenced the jury to return a verdict it might not otherwise have reached based on the lack of direct evidence establishing defendant's presence at the Acme supermarket or in the stolen white Honda sedan.

We note defense counsel never objected to the judge's curative instruction related to Young's testimony. Moreover, the single remark by Young was brief, and the judge immediately and compellingly told the jury to disregard that testimony.

Additionally, during summation, defense counsel highlighted that Fleites never identified defendant as the perpetrator. However, Fleites provided a description of the suspect at trial. Thus, the jury considered Fleites's testimony in conjunction with other evidence, including Chung's testimony and the video

21

footage from the Acme supermarket and the service area, to determine whether the perpetrator and defendant were the same person.

We are satisfied Lieutenant Young's single brief remark was unlikely to lead to an unjust result. Based on the judge's curative instructions to the jury, Young's mention of Fleites's identification of defendant was not sufficiently prejudicial to warrant a new trial. On these facts, we discern no abuse of discretion in the judge's denial of defendant's mistrial motion.

III.

We next review defendant's claim, raised for the first time on appeal, the judge erred in permitting the law enforcement officers to provide improper lay witness opinion testimony related to "identification details" from the video footage.

An error raised for the first time on appeal is reviewed for plain error. State v. C.W.H., 465 N.J. Super. 574, 594 (App. Div. 2021) (citing State v. Macon, 57 N.J. 325, 333 (1971)). Applying that standard of review, we will "disregard any error or omission 'unless it is of such a nature as to have been clearly capable of producing an unjust result.'" Ibid. (quoting R. 2:10-2). "The possibility of an unjust result must be 'sufficient to raise a reasonable doubt as

to whether the error led the jury to a result it otherwise might not have reached.'" Id. at 594-95 (quoting State v. Ross, 229 N.J. 389, 407 (2017)).

Here, defendant challenges Lieutenant Young's lay witness opinion, based on the officer's review of the service area video footage, that defendant occupied the stolen car. Defendant also challenges Trooper Musso's lay witness opinion identifying defendant from that same video footage.

At the time of trial, N.J.R.E. 701 provided as follows:

> [i]f a witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences may be admitted if it (a) is rationally based on the witness' perception and (b) will assist in understanding the witness' testimony or determining a fact in issue.

The rule is designed to "ensure that lay opinion is based on an adequate foundation." State v. Sanchez, 247 N.J. 450, 466 (2021) (quoting State v. Singh, 245 N.J. 1, 14 (2021)).

To satisfy the first requirement—the opinion be rationally based on the witness's own perception—a witness need not have observed the crime itself or been present when a recording was made to provide admissible testimony regarding the identity of a person depicted in the recording. Id. at 469. The witness need only "have actual knowledge, acquired through his or her senses,

of the matter to which he or she testifies." Id. at 466 (quoting State v. LaBrutto, 114 N.J. 187, 197 (1989)).

To satisfy the second requirement—the testimony must assist the jury either in understanding the witness's testimony or determining a disputed factual issue—the testimony should pertain to a matter which the witness is better positioned than the jury to form a conclusion. Id. at 469-70. In that regard, a judge should consider the "nature, duration, and timing of the witness's contacts with the defendant," and, in particular, the extent to which that contact occurred close in time to the offense or gave the witness an opportunity to observe aspects of the defendant's appearance which may not be as readily apparent at trial. Id. at 470-72.

Even when the issue is timely raised, a court's decision whether to exclude lay witness opinion testimony is entrusted to the trial judge's sound discretion, and will not be disturbed on appeal unless "so wide of the mark that a manifest denial of justice resulted." Id. at 465-66 (quoting Singh, 245 N.J. at 13). But where, as here, a defendant made no objection at trial, we review for plain error. R. 2:10-2.

24

A.

Defendant asserts Lieutenant Young's testimony that he "reasonably believed" the service area video footage depicted defendant alighting from the stolen white Honda sedan was improper lay witness opinion testimony. The footage showed a car matching the description of the stolen white Honda sedan arriving at the service area parking lot and parking out of the camera's view. A few seconds later, a person fitting defendant's description and wearing clothing similar to that worn by the perpetrator who stole Fleites's purse walked onscreen from the direction of the parked stolen vehicle, crossed the parking lot, and strolled out of the camera's view.

Prior to the challenged testimony, defense counsel vigorously cross-examined Young about his written police report regarding the same video footage. The following exchange occurred:

> Q. Okay. Now, sir, in your report didn't you write—
> the report that you gave to the prosecutor to prosecute
> this man where, basically, you stated in there that . . .
> the video saw him exiting the . . . parked vehicle. Is
> that right? Isn't that in your report, sir?
>
> A. Yes.
>
> Q. Okay. That's not true, isn't it?
>
> A. That is true because—

Q. Okay.

A. Allow me to explain.

Q. Okay. Listen—no, you can explain—[the prosecutor] gave you—

A. Okay.

Q. —ample opportunity. The video that we watched does not show him getting out of any vehicle. Isn't that right?

A. It does not show him getting out of the driver's seat.

. . . .

Q. Okay. Or . . . any seat for that matter, right?

A. No.

The prosecutor revisited this issue during redirect examination. The prosecutor sought to have Young clarify his testimony through the following exchange:

Q. Now, I wan[t to] refer back to your police report. So, in your police report during cross-examination there was a discussion that . . . you observed the defendant exiting the vehicle on the surveillance video, correct?

A. Correct.

Q. Can you just clarify what you were trying to clarify with regard to that entry in your police report?

26

A-0803-20

A.    Can I use the video to give my answer?

Q.    Sure.  I can play the video.

. . . .

LIEUTENANT YOUNG:   So, here is the subject vehicle in the investigation.  Subject vehicle is parking. There's an individual who identified as Gregory Prior leaving the area of that vehicle.  And I . . . reasonably believed that he had exited that vehicle based off that video and the surveillance.

On Young's recross-examination, defense counsel again raised the issue:

Q.    Okay.  Now, you . . . looked at this video and it's your words, you specifically said, you reasonably believed he exited the vehicle.  Is that right?

A.    Yes.

Q.    Okay.  So, you believed.  You didn't see him exit this vehicle, right, it's your belief that he did?

A.    Yes.

Defense counsel did not object to this line of questioning or Young's responses.

On appeal, defendant challenges Young's statements about seeing defendant exit from the stolen white Honda sedan car.  Defendant argues Young's testimony exceeded the bounds of appropriate lay witness opinion testimony because whether defendant exited from the stolen car was not within Young's personal knowledge.  Additionally, defendant contends Young was in

27

no better position than the jury to evaluate the images on the service area's video footage.

Here, Young rendered his opinion relying on his personal observations of the video and defendant's appearance. See Sanchez, 247 N.J. at 466. Arguably, Young was in a better position than the jury to evaluate the footage because, based on Young's own first-hand observations, he was familiar with defendant's appearance on the day the footage was taken and the layout of the service area.

Even if Young's testimony was inappropriate lay witness opinion testimony, which we do not agree, the admission of his testimony did not amount to plain error on this record. Defense counsel highlighted the obvious limitations regarding Young's testimony during pointed cross-examination. Further, the jury evaluated that testimony in conjunction with the actual video footage from the service area. Thus, we are satisfied there was no error in allowing Young's testimony as to the person depicted in the service area's video footage.

B.

Defendant next challenges Trooper Musso's testimony narrating the same video footage from the service area. On cross-examination, defense counsel asked:

Q.    Now, specifically I want you to watch the video . . . with the individual that walks from the top portion of the screen down to the bottom.  Okay.  Now, that individual do you recognize him in this video?

A.    Yes, I do.

Q.    Okay.  And what do you—who do you recognize him as?

A.    [T]he defendant.

Defendant failed to object to Musso's testimony identifying defendant in the video footage.

On appeal, defendant claims Musso's testimony was improper because a police officer may not opine as to the identity of a suspect in video footage. Moreover, defendant claims the testimony was highly prejudicial when considered in conjunction with Young's testimony.

Here, Musso's testimony fell within the bounds of proper lay witness opinion testimony.  Musso had direct contact with defendant the day of the incident at the very location where the video footage was taken.  Musso identified defendant in the video footage relying on his first-hand observation of defendant's appearance in the convenience store.  Based on Musso's personal contact and interaction with defendant, he was better positioned to make an evaluation of the person depicted in the service area's video footage.

A-0803-20

The Court's opinion in Singh, 245 N.J. at 17, on which defendant relies, is not to the contrary. Singh does not stand for the proposition that lay witness opinion testimony from a law enforcement officer is always improper. While the Singh Court found the detective's repeated references to the individual in the video as "the defendant" were inappropriate, the Court concluded the admission of the testimony did not constitute plain error. Ibid. We are satisfied there was no error on this record, let alone plain error, in admitting Musso's testimony identifying defendant from the service area video footage.

C.

Defendant raises State v. Watson, 254 N.J. 558 (2023), in support of his arguments related to the lay witness opinion testimony proffered by Lieutenant Young and Trooper Musso. Four years after the conclusion of defendant's trial, the Watson Court held "[a] fact witness who participated in an event can . . . offer lay opinion testimony about parts of a recording that depict what they perceived in real time." Id. at 599. The Court stated "narration evidence by a witness who did not observe events depicted in a video in real time may not include opinions about a video's content and may not comment on facts the parties reasonably dispute." Ibid.

In that case, the Court "provide[d] additional guidance[,] both to emphasize the limited nature of narration testimony and to ensure that the testimony does not improperly intrude on the jury's domain." Id. at 603. Watson simply offered further guidance in implementing the existing framework under Singh and Sanchez related to narration of video evidence and does not warrant reversal of defendant's convictions based on improper lay witness opinion testimony.

IV.

Also for the first time on appeal, defendant challenges various statements made by the prosecutor during closing argument. Defendant argues the statements constituted prosecutorial error and deprived him of a fair trial. We disagree.

Prosecutors are "charged not simply with the task of securing victory for the State but, more fundamentally, with seeing that justice is served." State v. Reddish, 181 N.J. 553, 641 (2004). While "afforded considerable leeway" during summation, prosecutors "must refrain from improper methods that result in a wrongful conviction." State v. Smith, 167 N.J. 158, 177 (2001). Specifically, prosecutors must confine their comments only to "evidence

revealed during the trial and reasonable inferences to be drawn from that evidence." Id. at 178.

However, "'not every deviation from the legal prescriptions governing prosecutorial conduct' requires reversal." State v. Jackson, 211 N.J. 394, 408-09 (2012) (quoting State v. Williams, 113 N.J. 393, 452 (1988)). A reviewing court must evaluate a prosecutor's challenged remarks in the context of the entire summation. State v. Atwater, 400 N.J. Super. 319, 335 (App. Div. 2008) (citing State v. Carter, 91 N.J. 86, 105 (1982)). Reversal is required only if the remarks were "'clearly and unmistakably improper'" and "'substantially prejudiced the defendant's fundamental right to have a jury fairly evaluate the merits of his or her defense.'" State v. Ingram, 196 N.J. 23, 43 (2008) (quoting State v. Harris, 181 N.J. 391, 495 (2004)). A reviewing court should consider "(1) whether defense counsel made timely and proper objections to the improper remarks; (2) whether the remarks were withdrawn promptly; and (3) whether the court ordered the remarks stricken from the record and instructed the jury to disregard them." Smith, 167 N.J. at 182.

"Generally, if no objection was made to the improper remarks, the remarks will not be deemed prejudicial." State v. Echols, 199 N.J. 344, 360 (2009) (quoting State v. Timmendequas, 161 N.J. 515, 576 (1999)). "[T]he failure to

object also deprives the court of an opportunity to take curative action." State v. Atkins, 405 N.J. Super. 392, 401 (App. Div. 2009). Because defense counsel in this matter failed to object to the remarks now claimed to constitute prosecutorial error, "defendant must demonstrate plain error to prevail." Timmendequas, 161 N.J. at 576.

Here, defendant challenges four remarks by the prosecutor during summation.

## A.

In the first challenged remark, the prosecutor stated, "Sometimes there are legal reasons that I can't bring you certain evidence. Sometimes I can't bring you certain things that you may want." Before the prosecutor could complete the thought, defense counsel objected. The judge promptly instructed the jury:

> [T]he objection is sustained. Your decision is to be based solely upon the evidence that you hear from the testimony from the witness stand and any exhibits admitted into evidence. Okay? I want to remind you, again, that comments made by counsel on their opening and closing are not evidence, all right?

On appeal, defendant asserts the judge's curative instruction was insufficient. He argues the prosecutor's remark directly alluded to Fleites's excluded out-of-court identification of him. He contends the judge's broad and general instruction failed to address the problem—the prosecutor's inappropriate

implication that the State had evidence that could not be presented—and the judge should have explicitly instructed the jury to disregard the remark. We disagree.

A prosecutor may not imply there was further incriminating evidence outside the record. Id. at 595. During opening arguments, the State informed the jury it would present evidence of Fleites's identification of defendant and testimony from another witness, the owner of the stolen white Honda sedan.[5] During closing argument, defense counsel reminded the jury that despite the State's promise to present such evidence during the trial, no such evidence was presented.

Here, the State never had an opportunity to complete its argument to the jury related to missing evidence. The half-finished thought during the prosecutor's closing argument, without further context, was of little moment such that the judge's prompt instruction, which the jury is presumed to follow, State v. Burns, 192 N.J. 312, 335 (2007), sufficed to ensure the jury confined its considerations expressly limited to the evidence presented in the record.

---

[5] The State could not locate the owner of the stolen white Honda sedan to testify at trial.

 A-0803-20

Moreover, defense counsel never objected to the curative instruction during closing argument. Further, defendant invited the State's response regarding missing evidence during closing argument. See State v. Engel, 249 N.J. Super. 336, 379 (App. Div. 1991) (concluding that "prosecutor's remarks did no more than respond substantially" to defense's argument "in order to 'right the scale'" (quoting United States v. Young, 470 U.S. 1, 13 (1985))).

Additionally, Fleites's identification of defendant was absent from the record because the judge held her in-court identification would be inadmissible, given Fleites's identification was unduly suggestive and unreliable. The prosecutor's single remark regarding evidence not presented to the jury was not so prejudicial in the context of the implication raised by defense counsel during closing argument to warrant reversal of defendant's convictions.

B.

Defendant also challenges the prosecutor's response to the argument that Musso's account of defendant's statement was suspect because the statement was inexplicably not recorded. During closing argument, the prosecutor stated:

> Sometimes technology fails. Trooper Musso thought the camera was working, thought his mic was working, and realized after the fact that it wasn't working. Sometimes that happens. But Trooper Musso testified, Lieutenant Young testified, Michelle Fleites testified, and James Chung, all testified that prior to May 27th,

A-0803-20

2018[,] they had no idea who Gregory Prior was. They have no reason to be untruthful to you on that stand. They didn't know who he was.

Defense counsel objected, asserting the prosecutor improperly vouched for the witnesses' credibility. While the judge sustained defendant's objection, the judge did not give a curative instruction.

Relying on State v. R.B., 183 N.J. 308, 331-32 (2005), defendant challenges this remark, asserting it implied Musso and Young had no motive to lie simply because they were law enforcement officers. Defendant correctly argues a prosecutor may not "contend in summation that the police had no motive to lie." Ibid.

However, taken in context in this case, it is clear the prosecutor argued the witnesses had no motive to falsely identify defendant because none of the witnesses had any prior association with him. The prosecutor's statement applied to all four of the State's witnesses. Defendant cites nothing in the prosecutor's summation implying Musso and Young had any special propensity to tell the truth solely because of their job as law enforcement officers. Moreover, the judge sustained defendant's objection to the prosecutor's comment on this issue and defendant failed to request a curative instruction.

A-0803-20

## C.

Defendant further challenges the prosecutor's reference to defendant's homelessness during summation. The prosecutor told the jury:

> [T]here was some testimony that the defendant told Trooper Musso he was homeless. Why is that relevant to you? Because he had $200 in his pocket, the same amount that was not returned to Michelle Fleites. He was located at the Vince Lombardi service station. How did he get there but for the stolen vehicle that he stole that day?

Relying on State v. Terrell, 359 N.J. Super. 241, 247 (App. Div. 2003), among other authority, defendant argues the State impermissibly referenced defendant's poverty to establish motive to commit a crime. We disagree that the prosecutor ran afoul of that principle.

While the prosecutor mentioned defendant's homelessness, she did not do so to suggest homelessness gave defendant a motive to commit a crime. Rather, the prosecutor made the statement to demonstrate defendant's lack of innocence because he arrived at a service area without a car and possessed the same amount of cash stolen from Fleites. Nothing in the prosecutor's argument implied defendant committed the crime because he was impoverished.

A-0803-20

D.

Additionally, defendant challenges the prosecutor's mention that Musso identified defendant from surveillance footage. We previously rejected defendant's argument that Musso's trial testimony based on the video footage and his identification of defendant from that footage was improper lay witness opinion testimony. See infra, Point III. Thus, the prosecutor's statement was not improper.

We are satisfied the prosecutor's remarks during closing argument did not constitute prosecutorial error and were not sufficiently harmful to warrant reversal. At least two of the remarks made by the prosecutor were in response to defense counsel's closing argument. Additionally, any improper remarks objected to by defendant were addressed by the judge's sustaining defendant's objection and issuing prompt curative instructions to the jury.

V.

Defendant, for the first time on appeal, argues the judge erred in failing to provide an adverse inference instruction regarding Musso's failure to record the questioning of defendant. We disagree.

A court may consider an adverse inference charge to "balance the scales of justice" when the State withholds or destroys evidence that could prove

A-0803-20

favorable to the defense at trial. See State v. Dabas, 215 N.J. 114, 140 (2013) (concluding an adverse inference charge is appropriate where the investigator destroyed interview notes). Additionally, a court may provide an adverse inference charge where the police failed to preserve videotaped evidence of an investigative procedure despite the defense's timely request to preserve such evidence. State v. Richardson, 452 N.J. Super. 124, 137-38 (App. Div. 2017).

A trial court has broad discretion regarding a timely request for an adverse inference charge. Id. at 137. Because defendant failed to request an adverse inference charge, we review for plain error. R. 2:10-2.

On appeal, defendant tacitly acknowledges the purported malfunction of the equipment in Musso's patrol car precluded the existence of any recording such that the State could not have withheld or destroyed evidence to warrant an adverse inference charge. Instead, relying on State v. Benjamin, 442 N.J. Super. 258, 267 (App. Div. 2015), defendant asserts a failure to make the recording justified an adverse inference charge.

In Benjamin, we held a defendant should be permitted an opportunity to obtain records required to be produced and maintained by prosecutors pursuant to an Attorney General directive regarding certain waiver decisions. Id. at 265-

67.  If no such records existed, we determined the trial judge could consider an adverse inference from the absence of those documents.  Id. at 264-65, 267.

In this case, defendant asserts the State Police standard operating procedures required troopers to have the video and audio equipment "on at all times" while actively on patrol and may not deactivate the recording function once activated "until the trooper's involvement with the incident has been completed."  N.J. State Police, S.O.P. F19, Mobile Video/Audio Recording (MVR) Equipment § IV(B)(1)(b), (2)(d) (2010) (Da46).  The procedures further required troopers to ensure properly functioning video and audio equipment at the start of each shift and to "immediately" report any equipment problems to a supervisor.  Id. at § IV(B)(1)(c)-(d).

Defendant asserts Musso violated these procedures.  He claims the failure to have functioning equipment in the patrol car warranted an adverse inference instruction, particularly because the equipment malfunctioned just before defendant made an incriminating statement to Musso.

Because Musso was unaware the equipment in his patrol case ceased working, he did not violate the State Police standard operating procedures.  Moreover, even assuming Musso violated the State Police procedures, defendant never requested an adverse inference charge.  See State v. W.B., 205 N.J. 588,

607-09 (2011) (declining to hold the defendant was entitled to an adverse inference charge despite the failure to preserve an investigating officer's written notes where defendant failed to request the charge). Further, defense counsel cross-examined Musso regarding the lack of operational recording equipment, argued to the jury in summation the encounter between defendant and Musso should have been recorded, and implied the failure to record defendant's statement was suspicious. We are satisfied the lack of an adverse inference charge under these circumstances was not clearly capable of producing an unjust result so as to warrant reversal of defendant's convictions.

VI.

We next consider defendant's argument that the cumulative effect of these claimed errors warrants reversal. We disagree.

Reversal may be warranted if the cumulative effect of a series of errors is harmful, even if each is harmless in itself. State v. Jenewicz, 193 N.J. 440, 474 (2008). Here, we reject there were reversible errors with the exception of the admission of defendant's statement after invoking his right to remain silent. However, as we previously stated, the error in admitting defendant's statement was "harmless beyond a reasonable doubt" in light of the untainted and

41

unchallenged evidence of defendant's guilt. On this record, defendant's cumulative error argument fails.

## VII.

We next consider defendant's ineffective assistance of counsel argument related to his original plea on count three. An ineffective assistance of counsel claim is not cognizable on direct appeal because such claims require consideration of evidence outside the existing record. State v. Preciose, 129 N.J. 451, 460 (1992). Therefore, we decline to consider the argument.

## VIII.

We next consider defendant's argument for a sentencing remand on counts four and five. Defendant claims the sentencing judge failed to engage in the appropriate legal analysis regarding imposition of consecutive sentences. Further, defendant argues, and the State concedes, the judge failed to address the overall fairness of the sentence pursuant to State v. Torres.

## A.

Here, the State concedes, and we agree, the judge failed to explain why the sentence imposed was fair. Thus, we remand to the sentencing court to provide a statement regarding the overall fairness of defendant's sentence consistent with Torres.

A-0803-20

However, we reject defendant's claim that the sentencing judge failed to conduct a proper analysis under State v. Yarbough in imposing consecutive sentences.

A trial court has broad discretion in imposing a sentence. State v. Dalziel, 182 N.J. 494, 500 (2005). We will not disturb a sentencing decision so long as the decision adheres to the applicable statutory guidelines, identifies all applicable aggravating and mitigating factors, and is supported by sufficient credible evidence in the record. State v. Natale, 184 N.J. 458, 489 (2005). A sentence is subject to reversal only if it "shocks the judicial conscience." State v. O'Donnell, 117 N.J. 210, 215-16 (1989).

With respect to a decision whether to impose sentences consecutively or concurrently, a sentencing court should adhere to the principle that "there can be no free crimes in a system for which the punishment shall fit the crime." State v. Carey, 168 N.J. 413, 422 (2001) (quoting Yarbough, 100 N.J. at 643 (1985)). Thus, a sentencing court should consider the extent to which:

> (a) the crimes and their objectives were predominantly independent of each other;
>
> (b) the crimes involved separate acts of violence or threats of violence;

(c) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;

(d) any of the crimes involved multiple victims; and

(e) the convictions for which the sentences are to be imposed are numerous.

[Carey, 168 N.J. at 422-23 (quoting Yarbough, 100 N.J. at 644).]

A sentencing judge is required to weigh these criteria qualitatively rather than quantitatively. Id. 427-28. Moreover, a sentencing judge must separately state the reasons for imposing a concurrent or consecutive sentence in the sentencing decision. Yarbough, 100 N.J. at 643.

Here, the judge noted defendant's extensive criminal history since 1985, including multiple convictions for robbery, theft, burglary, and assault. Thus, the judge concluded defendant "most certainly" qualified as a persistent offender under N.J.S.A. 2C:44-3(a) and satisfied the criteria for a discretionary extended term sentence.

Next, the judge applied aggravating factor three, N.J.S.A. 2C:44-1(a)(3), the risk that defendant would commit another offense, and aggravating factor six, N.J.S.A. 2C:44-1(a)(6), the extent of defendant's prior record and seriousness of the offenses involved. The judge found defendant was undeterred

by his multiple prior incarcerations and his "horrendous" criminal record included several violent offenses. Further, the judge applied aggravating factor nine, N.J.S.A. 2C:44-1(a)(9), the need for deterrence, based on defendant's extensive criminal history. Additionally, the judge applied aggravating factor thirteen, N.J.S.A. 2C:44-1(a)(13), because defendant used a stolen motor vehicle in the course of committing a theft. Because the judge found no mitigating factors, he concluded that the aggravating factors clearly outweighed the mitigating factors.

The judge imposed the maximum sentences on both counts. He sentenced defendant to a ten-year term with a five-year period of parole ineligibility on count five and a five-year term with a two-and-a-half-year period of parole ineligibility on count four. The judge specifically found consecutive sentences were warranted under a Yarbough analysis.

Having reviewed the record, we reject defendant's argument that the sentencing judge failed to engage in a proper analysis under Yarbough. The judge determined the sentences on these counts would run consecutively, noting that there were "two separate crimes, two separate victims, fully independent of one another." The judge did not abuse his discretion in ordering the sentences on counts four and five to run consecutively.

IX.

Defendant next argues, and the State concedes, the judgment of conviction ordering payment of restitution should be vacated.  The State agrees the $197 taken from Fleites was returned to her.  Thus, Fleites suffered no loss and is not entitled to restitution under N.J.S.A. 2C:43-3.

To the extent we have not addressed any of defendant's argument on appeal, the arguments lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

Affirmed as to the convictions.  Remanded to the trial court to consider the sentence imposed under State v. Torres and to vacate defendant's payment of restitution.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0803-20